UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

ANNE O'NEILL,

                         Plaintiff,

v.

                                              Case # 18-CV-53-FPG

                                              DECISION AND ORDER

ALEX AZAR, SECRETARY OF THE DEPARTMENT
OF HEALTH AND HUMAN SERVICES,

                         Defendant.

## INTRODUCTION

Plaintiff Anne O'Neill brought this action on January 10, 2018, claiming that Defendant Alex Azar, United States Secretary for Health and Human Services (the Secretary), improperly denied her coverage under Part A of the Medicare program for a hospital stay from August 28 to September 1, 2012. ECF No. 18-1 at 3. Both parties have moved for judgment on the pleadings under Federal Rule of Civil Procedure 12(c). ECF Nos. 18, 19. The Court DENIES Plaintiff's Motion and GRANTS Defendant's Motion because Defendant's decision was supported by substantial evidence.

## LEGAL STANDARD

"A final decision by [the Secretary] as to Medicare coverage is conclusive if it is supported by substantial evidence." *Rapport v. Leavitt*, 564 F. Supp. 2d 186, 191 (W.D.N.Y. 2008). Substantial evidence "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Heaman v. Berryhill*, 765 F. App'x 498, 499 (2d Cir. 2019) (citation and quotation marks omitted) (summary order). It is a "very deferential standard of review" that means an entity's findings may only be rejected "if a reasonable factfinder would *have to conclude*

*otherwise*." *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012) (per curiam) (citations and quotation marks omitted). Plaintiff "bears the burden of proving her entitlement to Medicare coverage, but "[w]here there is substantial evidence to support either [her or Defendant's] position, the determination is one to be made by the factfinder." *Alston v. Sullivan*, 904 F.2d 122, 126 (2d Cir. 1990).

"A district court's review of the Secretary's determination is limited to whether the Secretary applied the proper legal standards, whether its factual findings were supported by substantial evidence, and whether the Secretary provided a full and fair hearing." *Martinelli v. Burwell*, 130 F. Supp. 3d 781, 787 (W.D.N.Y. 2015) (quotation marks, brackets, and citation omitted).

## BACKGROUND

The Court takes the following facts from the record.

Sometime during the evening of August 26, 2012, Plaintiff, then 91 years' old, fell at home and injured her right arm and head. She was living independently at the time.

After her fall, she checked in to the Emergency Department (ED) at Buffalo General Hospital (BGH). The physicians responsible for her care had imaging performed on her right arm and discovered a fracture in her right humerus.[1] They provided her with an immobilizer for her right arm, sutured a laceration on the left side of her head, and discharged her early on the morning of August 27, 2012 to her family's care.

Plaintiff's nephew picked up and transported Plaintiff to her sister's home. When she arrived, she could not walk into the house. After becoming concerned for Plaintiff, her family members contacted her primary care physician (PCP) seeking advice on how to proceed.

---

[1] The humerus is the large bone in the upper arm.

Plaintiff's PCP advised Plaintiff to "go back to [the ED] for eval [sic], admission, pain control, and rehab [sic]." He also recommended contacting an ambulance to transport Plaintiff to the ED.

An ambulance transported Plaintiff back to the ED at approximately 2:00 p.m. on August 27, 2012. The parties dispute which occurred first, but at some point after her arrival, Plaintiff was admitted to BGH as an inpatient, and a BGH employee issued a hospital-issued notice of noncoverage. The Notice explained that Plaintiff's care would not be covered starting on August 28, 2012, because the care was not medically necessary and could be furnished safely in another environment. Plaintiff's sister signed the Notice on Plaintiff's behalf.

On August 28, 2012, a social worker met with Plaintiff, her family, and Plaintiff's financial advisor to identify a skilled nursing facility (SNF) to which BGH could discharge Plaintiff. Plaintiff identified a specific SNF to which she wanted to be discharged because it was close to home, but initially did not want to disclose financial information to it. Later the same day, Plaintiff and her family completed applications to Plaintiff's preferred SNF and others, all of which were granted. Plaintiff chose her preferred SNF and was discharged to it on September 1, 2012.

BGH later sent Plaintiff a bill totaling approximately $5,500 for her care at BGH from August 28 to September 1, 2012.

Plaintiff requested an appeal of the coverage determination, memorialized in the Notice, at each step of the Medicare coverage appeal process. She first appealed the Notice to a Qualified Independent Organization (QIO), which denied her appeal. She appealed the QIO determination to a Qualified Independent Contractor. Her appeal was denied. She then appealed the QIO determination to an administrative law judge (ALJ). The ALJ held a hearing on April 8, 2013, and issued a decision upholding the denial of coverage. ECF No. 1-2. She then appealed the ALJ's

decision to the Medicare Appeals Council (MAC), which affirmed the ALJ's decision on November 7, 2017, but modified the basis for it. ECF No. 1-1. Her appeal to this Court followed.

## DISCUSSION

Plaintiff asks the Court to reverse the Secretary's final decision denying her Medicare coverage on four bases: (1) Plaintiff's care at BGH was medically reasonable and necessary; (2) Plaintiff did not know, or reasonably could not be expected to know, that her stay would not be covered; (3) the MAC improperly applied the so-called treating physician rule in its decision; and (4) the MAC committed legal error in its decision when it incorrectly interpreted 42 C.F.R. § 412.42(c)(1). The Court addresses each below.

### I. Medical Reasonableness and Necessity of Care

Plaintiff first argues that her care at BGH was medically reasonable and necessary because she could not walk after she was discharged, her family could not care for her, her PCP recommended that she return to the ED, and she did not refuse admission to an SNF. ECF No. 18-1 at 12-16. The Court is not persuaded.

Under the provisions of the Social Security Act applicable to determinations on Medicare coverage, the Secretary "may not provide reimbursement for services that are 'not reasonable and necessary' for diagnosis or treatment of illness or injury." *New York ex rel. Holland v. Sullivan*, 927 F.2d 57, 58-59 (2d Cir. 1991) (quoting 42 U.S.C. § 1395y(a)(1)(A)). "The determination of whether services are reasonable and necessary includes a decision as to the setting where the services are to be rendered, for example, on an inpatient basis in a hospital or [SNF], as an outpatient, or in the patient's home." *Id.* at 59 (citing *New York ex rel. Bodnar v. Sec'y of Health & Human Servs.*, 903 F.2d 122, 125 (2d Cir. 1990)).

While physicians or practitioners responsible for a patient's care are partially responsible for determining whether a patient should be admitted as an inpatient, ECF No. 1-1 at 7 (describing standards outlined in Medicare Benefit Policy Manual), the Medicare Program Integrity Manual explains how a reviewing entity, such as the MAC, determines whether inpatient or outpatient care is required. "Inpatient care rather than outpatient care is required only if the beneficiary's medical condition, safety, or health would be significantly and directly threatened if care was provided in a less intensive setting." *In re Feather River Hosp.*, No. M-12-1154, 2012 WL 3164431, at *2 (Medicare Appeals Council June 1, 2012)

Here, substantial evidence supports the MAC's conclusion that Plaintiff's medical condition, safety, or health would not be significantly and directly threatened if care was provided in a less intensive setting. The MAC based its conclusion largely on the stability of Plaintiff's condition when she was readmitted to the ED on August 27, 2012. Although Plaintiff had high blood pressure, her vitals were normal, and she was alert and oriented. ECF no. 1-1 at 9-10. In short, there is no indication in the record that Plaintiff's health would have suffered if she were cared for at an SNF.

None of Plaintiff's arguments directly address the standard of review the MAC applied or its conclusion. The only argument that comes close is that Plaintiff's family contacted her PCP for advice because Plaintiff's condition was "worsening." But that argument is conclusory; outside of the fact that Plaintiff could not walk, there are no facts or medical findings that show Plaintiff's condition was anything but normal.

Plaintiff's remaining arguments—her family could not care for her, her PCP recommended her return to the ED, and she did not refuse admission to an SNF—do not undercut the MAC's analysis. The last is irrelevant, and the other two demonstrate only that she could not receive in-

home care.  Put simply, the record does not demonstrate that Plaintiff's care in the BGH ED was medically reasonable or necessary.

## II.     Knowledge of Coverage

Plaintiff next argues that, under 42 U.S.C. § 1395pp(a), she is entitled to Medicare coverage because she "did not know, and could not reasonably have been expected to know," that her care was not covered.  The Court disagrees.

Under § 1395pp(a), the Secretary may not deny coverage of care where a claimant "did not know, and could reasonably have been expected to know, that" the care would not be covered. The Department of Health and Human Services' (HHS) regulations provide further explanation. "A Medicare beneficiary is considered to have known that services were not covered if written notice has been given to the beneficiary or someone acting on his or her behalf, explaining that the services were not covered because they did not meet Medicare coverage guidelines." *Ottinger v. Sebelius*, No. 2:12-CV-2, 2012 WL 5947577, at *7 (D. Vt. Nov. 28, 2012) (quoting 42 C.F.R. § 411.404(b)) (quotation marks omitted).

Here, it is undisputed that Plaintiff was given notice because her sister, who was acting on her behalf, signed the Notice explaining that Plaintiff's inpatient care would not be covered as of August 28, 2012.  ECF No. 1-1 at 5.  Nevertheless, Plaintiff contends that she was only following her PCP's recommendations and that, if care was required at a less intensive facility, BGH employees should have facilitated the transfer.  ECF No. 18-1 at 17-19.

Neither argument is relevant here.  The only inquiry required is whether the Notice met the requirements explained above such that Plaintiff would in fact be liable for her care as of August 28, 2012.  The Court finds that the Notice met those requirements and she was properly notified

that Medicare would not cover her care. The MAC's conclusion was thus supported by substantial evidence.

## III. Treating Physician Rule

Plaintiff also argues that the MAC erred when it stated that "Medicare does not recognize the treating physician rule" and that the MAC did not properly consider Plaintiff's treating physicians' opinion that she should be admitted to BGH. ECF No. 18-1 at 19-21. Both arguments fail.

Preliminarily, the "treating physician rule" is a rule not relevant to determine Medicare coverage, but a rule that applies when the Social Security Administration decides whether an individual is entitled to Social Security benefits. So, Plaintiff argues here that a rule identical or akin to the treating physician rule exists in the Medicare context. Plaintiff misinterprets the law.

In *Holland*, the Second Circuit specifically analyzed whether the treating physician rule applied in Medicare coverage determinations. 927 F.2d at 60. It left that question to the Secretary to decide. *Id.* Two years later, the Secretary issued CMS Ruling No. 93-1, which concluded that a treating physician's determination would be considered in the context of the entire record and, unlike the Social Security context, would not be given presumptive weight.[2] *Maxmed Healthcare, Inc. v. Burwell*, 152 F. Supp. 3d 619, 639 (W.D. Tx. 2016).

The MAC acknowledged CMS Ruling No. 93-1 in its decision and, based on it, concluded that "Medicare does not recognize the treating physician rule *developed for adjudicating Social Security disability cases*." Plaintiff left the latter half of that statement out of her argument and did so likely because it drastically changes the tone of the MAC's conclusion. In any case, the

---

[2] Plaintiff acknowledges the content of CMS Ruling No. 93-1 and that it is binding on the MAC. ECF No. 18-1 at 19-20.

MAC was correct: the treating physician rule as it exists in the Social Security context does not apply to Medicare coverage determinations.

Importantly, the MAC *did* consider Plaintiff's treating physician's opinions; it specifically discussed her PCP's recommendation to return to the ED and her BGH physicians' decisions to admit her and evaluate her for physical and occupational therapy. ECF No. 1-1 at 5, 10-11. But it did so in the context of the other medical evidence in the record and did not accord those decisions presumptive weight. That course of action was proper and, thus, supported by substantial evidence.

**IV.    42 C.F.R. § 412.42(c)(1)**

Finally, Plaintiff argues that the MAC failed to consider and apply § 412.42(c)(1), which purportedly allows Medicare coverage of inpatient hospital care while a patient is awaiting placement in an SNF as Plaintiff was at the end of August 2012. ECF No. 18-1 at 21-24. Plaintiff misapprehends the import of § 412.42(c)(1).

Under § 412.42(c)(1), "[a] hospital may charge a beneficiary for services excluded from coverage" after the following three conditions are met: (1) the hospital "determines that the beneficiary no longer requires inpatient hospital care"; (2) a physician or QIO concurs with the hospital's determination; and (3) the hospital "notifies the beneficiary (or his or her representative) of his or her discharge rights in writing . . . and notifies the beneficiary . . . that in the hospital's opinion, and with the attending physician's concurrence or that of the QIO, the beneficiary no longer requires inpatient hospital care."[3]

The Court finds that all three conditions were met here. BGH determined that Plaintiff no longer required hospital care, a QIO concurred with the hospital's determination, and the hospital

---

[3] There is a fourth condition, which is not relevant here, explaining requirements for the hospital if the beneficiary is later determined to require an acute level of care.

notified Plaintiff's representative, her sister, in writing that the determination was made. Consequently, because those conditions were met, BGH was entitled to charge Plaintiff for the services she received.

Plaintiff argues that a parenthetical in the first condition shows that she was entitled to coverage. The parenthetical reads as follows:

> The phrase "inpatient hospital care" includes cases where a beneficiary needs [an] SNF level of care, but, under Medicare criteria, [an] SNF-level bed is not available. This also means that a hospital may find that a patient awaiting SNF placement no longer requires inpatient hospital care because either a SNF-level bed has become available or the patient no longer requires SNF-level care

42 C.F.R. § 412.42(c)(1).

The Court does not agree with Plaintiff's assessment. A plain reading of this language shows that a hospital may charge a beneficiary even if they need SNF-level care but an SNF bed is not available. This is so because, under the first condition, the hospital must determine that a beneficiary no longer needs "inpatient hospital care," and, for the purposes of this regulation, that phrase includes cases where a beneficiary needs SNF-level care, but an SNF-level bed is not available.

More importantly, the parenthetical is irrelevant here. SNF beds were available to Plaintiff; she identified an SNF to which she wanted to be discharged, balked at disclosing financial information in the application, and then later applied to and was accepted at and discharged to her preferred SNF.

Two cases further support the Court's conclusion. In *Gonzalez v. Sec'y of Health & Human Servs.*, the plaintiff presented to a hospital requiring surgery. 644 F. Supp. 1086, 1086 (E.D.N.Y. 1986). After receiving the surgery and a subsequent surgery to remedy complications from the first surgery, the hospital determined that plaintiff would need only custodial care and informed

her that Medicare coverage of her care would cease after a certain date. *Id.* at 1086-87. She stayed past the date because she could not return to her home due to its insanitary condition, and she later sued to received Medicare coverage for her care. *Id.* at 1087.

The *Gonzalez* Court upheld the defendant's decision to deny benefits because it was not her physical condition but the condition of her home that compelled her stay. *Id.* at 1088.

In *Melson ex rel. Melson v. Sec'y of Health & Human Servs.*, the court denied Medicare coverage of plaintiff's inpatient hospital care because he remained at the hospital until a specific SNF facility had a bed available for him. 702 F. Supp. 997, 1000 (W.D.N.Y. 1988). The *Melson* Court found that SNF beds were available, Plaintiff chose to remain in the hospital's care until a bed at a specific facility opened, and, therefore, plaintiff was not entitled to Medicare coverage for the hospital care. *Id.*

*Gonzalez* and *Melson* each demonstrate that Plaintiff is not entitled to coverage for her care at BGH. Initially, just as in *Gonzalez*, Plaintiff was compelled to return to the BGH ED not because it was medically reasonable or necessary, but because she would not receive appropriate care at home. And, just as in *Melson*, her choice to remain at BGH while she found an appropriate SNF facility is not covered by Medicare. Consequently, the Court finds that the MAC's determination was supported by substantial evidence, and Plaintiff's care at BGH from August 28 to September 1, 2012, is not covered by Medicare Part A.

## CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Judgment on the Pleadings, ECF No. 18, is DENIED, and the Secretary's Motion for Judgment on the Pleadings, ECF No. 19, is GRANTED. The Clerk of Court is directed to enter judgment for the Secretary and close this case.

IT IS SO ORDERED.

Dated: September 26, 2019
       Rochester, New York

_____
HON. FRANK P. GERACI, JR.
Chief Judge
United States District Court